**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HIRAM IRIZARRY MARTINEZ, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  10-5863 |
| MICHAEL J. ASTRUE, Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                         October 19, 2011

Currently before the Court are the Objections of the Plaintiff Hiram Irizarry Martinez to the

Report and Recommendation of United States Magistrate Judge Jacob P. Hart.  Having engaged in

a thorough review of the Objections, the Response of the Commissioner of Social Security (the

"Commissioner"), the Magistrate Judge's Report and Recommendation, and the certified

administrative record of evidence, the Court overrules the Objections and adopts the Report and

Recommendation in its entirety.

## I.     PROCEDURAL HISTORY[1]

On March 20, 2008, Plaintiff Hiram Irizarry Martinez, who was then forty-four years old,

filed a petition for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social

Security Act, 42 U.S.C. § 301, et seq.  (R. 53-58.)  Plaintiff alleged disability beginning as of the

---

[1]  For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

date of filing[2] due to mental health problems, a herniated disc, diabetes, asthma, and heart

problems.  (R. 60.)  As a result of the state agency's denial of his application on initial review, (R.

44-48), Plaintiff requested an administrative hearing.  (R. 39.)  Administrative Law Judge ("ALJ")

Deborah Mande presided over the hearing on July 7, 2009, at which time a vocational expert

testified.  (R. 530-44.)  In an opinion issued July 16, 2009, the ALJ denied Plaintiff's claim for

benefits, finding that he retained the residual functional capacity to perform simple, repetitive,

light exertional work, in a low stress environment with infrequent changes and no contact with the

public.  (R. 12-28.)  As the vocational expert could identify several jobs in the regional and

national economies fitting this profile, the ALJ deemed Plaintiff not disabled.  (R. 27.)  Plaintiff

thereafter sought review by the Appeals Counsel, which denied his request on September 7, 2010,

thereby making the ALJ's decision the final decision of the Commissioner.  (R. 5.)

Plaintiff initiated the current action on October 29, 2010, seeking federal judicial review of

the Commissioner's decision.  The Court referred the matter to Magistrate Judge Jacob P. Hart,

who issued a Report and Recommendation ("R&R"), dated September 6, 2011, affirming the

Commissioner's decision.  Plaintiff filed Objections to the Report and Recommendation on

September 20, 2011, and the Commissioner responded on October 7, 2011.

II.    **STANDARDS OF REVIEW**[3]

    A.    <u>**Standard for Judicial Review of an ALJ's Decision**</u>

It is well-established that judicial review of the Commissioner's decision is limited to

---

[2]  The petition originally alleged a disability onset date of August 1, 1991, but Plaintiff subsequently amended that date to March 20, 2008.  (R. 53, 533.)

[3]  The medical record, ALJ's findings, and statutory framework for assessing a disability claim were adequately summarized by the Magistrate Judge.  Accordingly, the Court incorporates those portions of the R&R by reference into this opinion.

determining whether "substantial evidence" supports the decision.  <u>Monsour Med. Ctr. v. Heckler</u>, 806 F.2d 1185, 1190 (3d Cir. 1986).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  <u>Hartranft v. Apfel</u>, 181 F.3d 358, 360 (3d Cir. 1999) (quoting <u>Pierce v. Underwood</u>, 487 U.S. 552, 564-65 (1988)).  When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  <u>Monsour</u>, 806 F.2d at 1190.  In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence.  <u>Id.</u> at 1190-91; <u>see also</u> <u>Gilmore v. Barnhart</u>, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact") (quoting <u>Schwartz v. Halter</u>, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

**B.     <u>Standard of Review of Objections to a Report and Recommendation</u>**

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de novo review of only those issues raised on objection.  28 U.S.C. § 636(b)(1) (2005); <u>see also</u> <u>Sample v. Diecks</u>, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report.  28 U.S.C. § 636(b)(1).  The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations.  <u>See</u> <u>United v. Raddatz</u>, 447 U.S. 667, 676 (1980).

## III.    DISCUSSION

Plaintiff presently raises four Objections to the Report and Recommendation.  Specifically, he contends that: (1) the Magistrate Judge's finding that substantial evidence supports the ALJ's conclusion that Plaintiff has no "severe" back impairment is erroneous; (2) the Magistrate Judge's analysis of the ALJ's evaluation of the opinions by treating physician (Dr. Talangbayan) and examining physician (Dr. Orlow) is contrary to law and fact; (3) the Magistrate Judge's conclusion that the new and material evidence submitted to the Appeals Council was not material is unsupported by law or fact; and (4) the Magistrate Judge's analysis of the ALJ's evaluation of Plaintiff's mental impairment is mistaken.  As set forth in detail below, the Court finds that none of these Objections warrant rejection of the Report and Recommendation.

### A.    <u>Duplicative Objections (Second and Fourth Objections)</u>

Plaintiff's second and fourth Objections rely almost exclusively on the briefing presented to the Magistrate Judge.  In light of the requirements of the Federal Rules of Civil Procedure, the Court declines to engage in de novo review of such Objections.

Federal Rule of Civil Procedure 72 provides that a party may serve and file "specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72.  Local Rule of Civil Procedure 72.1 goes on to indicate that such written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  E.D. Pa. R. 72.1(IV)(b).  In other words, an objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge.  As succinctly explained by one federal district court:

> If the magistrate system is to be effective, and if profligate wasting of judicial

> resources is to be avoided, the district court should be spared the chore of traversing ground already plowed by the magistrate except in those areas where counsel, consistent with the [Federal Rule of Civil Procedure], can in good conscience complain to the district judge that an objection to a particular finding or recommendation is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law . . ." The federal procedural scheme thus calls for rifle-shot objections, and its legitimate purposes are frustrated by a vague gunshot blast . . .

Sackall v. Heckler, 104 F.R.D. 401, 402-03 (D.R.I. 1984); see also Goney v. Clark, 749 F.2d 5, 6 (3d Cir. 1984) ("We are satisfied that providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process.").

Repeatedly, courts, both within and outside of the Third Circuit, have held that objections which merely rehash arguments presented to and considered by a magistrate judge are not entitled to de novo review.  See, e.g., Edmond v. Collins, 8 F.3d 290, 293 n.7 (5th Cir. 1993) (holding that "[a]lthough petitioner filed written objections to the magistrate's findings, these objections consisted solely of a copy of the brief filed to support the original habeas petition to the district court. . . .  [Petitioner] thus did not raise a factual objection by merely rearguing arguments contained in the original petition"); Palmer v. Astrue, No. Civ.A.09-820, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010) ("If . . . objections to a Report merely reiterate arguments previously raised before a magistrate, de novo review is not required."); Nghiem v. Kerestes, No. Civ.A.08-4224, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in additional review of objections where the objections merely re-articulated all the claims and theories for relief that were addressed and dismissed by the magistrate judge), aff'd, 410 Fed. Appx. 490 (3d Cir. 2011); King v. Caruso, 542 F. Supp. 2d 703, 706 (E.D. Mich. 2008) (noting that objections to a report and recommendation that merely summarize what was brought before the magistrate judge

are not sufficient to alert the district court to alleged errors by the magistrate judge); Smith v. City

of N. Charleston, 401 F. Supp. 2d 530, 533 (D.S.C. 2005) (holding that objections to a magistrate

judge's report and recommendation that consisted of rehashing the arguments made to the

magistrate judge did not warrant de novo review since they did not cite specific conclusions of the

report that were erroneous); Betancourt v. Ace Ins. Co. of P.R., 313 F. Supp. 2d 32, 34 (D.P.R.

2004) (finding that where objections are an "exact duplicate" of arguments raised to the magistrate

judge, the objections "do not reflect an understanding that a plaintiff may not simply restate the

arguments that the Magistrate-Judge considered and expect the Court to treat the filing seriously");

Sanford v. Principi, No. Civ.A.00-502, 2002 WL 32334396, at *1 (S.D. W. Va. Sept. 26, 2002)

(holding that objections that fail to direct the district court to any specific error by the magistrate

judge do not trigger de novo review because such objections "prevent[] the district court from

focusing on disputed issues and thus render[] the initial referral to the magistrate judge useless"),

aff'd, 60 Fed. Appx. 473 (4th Cir. 2003); Camardo v. Gen. Motors Hourly-Rate Employees

Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (stating that it is "improper . . . to attempt

to relitigate the entire content of the hearing before the Magistrate Judge by submitting papers to a

district court which are nothing more than a rehashing of the same arguments and positions taken

in the original papers submitted to the Magistrate Judge").

   In the present case, Plaintiff's second and fourth Objections constitute a simple rehashing

of his Memorandum in support of his Request for Review presented to the Magistrate Judge.

Indeed, the argument in support of the second Objection simply states that "Plaintiff stands on the

arguments propounded in his brief (Docket Document #14) at pages 7-14."  (Pl.'s Objections 14.)

Similarly, the argument in support of the fourth Objection offers little more than a mere reference

to his prior brief.  To now re-address these issues would duplicate the thorough efforts of the

Magistrate Judge and defeat any judicial efficiency gained by the report and recommendation process.  As this Court finds no clear error or manifest injustice in the R&R, we overrule such duplicative Objections.

**B.      Objection to the Magistrate Judge's Affirming the ALJ's Conclusion that Plaintiff Has No "Severe" Back Impairment (First Objection)**

Plaintiff's next Objection challenges the Magistrate Judge's affirmation of the ALJ's finding that Plaintiff had no "severe" impairment relating to a back condition because no medical signs or laboratory tests objectively supported such a condition.  Step two of the sequential analysis places a burden on the claimant to show that her impairment is "severe."  20 C.F.R. § 416.920(c).  An impairment is "severe" when it is "of a magnitude sufficient to limit significantly the individual's 'physical or mental ability to do basic work activities.'"  Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted).  Conversely, a non-severe impairment does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities.[4]  20 C.F.R. § 416.921(a); see also Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).  In addition, the impairment must be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); see also Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

In determining that Plaintiff's back impairment was not severe, the ALJ, in this case, reasoned as follows:

Although the claimant alleges having low back pain, there is insufficient medical

---

[4]  These basic work activities include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting."  20 C.F.R. § 416.921(b).

evidence of record to corroborate or support any finding of a musculoskeletal impairment. An x-ray of the claimant's lumbar spine in July 2008 showed that the lumbosacral spine was within normal limits except for a minor congenital anomaly. There is no evidence of any other testing or treatment, although the claimant was apparently referred to pain management at one point. No symptom or combination of symptoms alone can constitute a medically determinable impairment. Where there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment, a condition must be considered not a "severe" impairment. There is no evidence of a medically determinable, severe back impairment in this case.

(R. 20-21.)

Upon review of Plaintiff's challenge to this finding, the Magistrate Judge acknowledged that portions of the record substantiated the existence of a back impairment. Specifically, the R&R observed that Plaintiff's primary care providers, both at the medical clinic and at Prison Health Services during his incarceration, repeatedly reported on Plaintiff's complaints of back pain and prescribed him pain killers. (R&R 5.) Prison Health Services notations indicated that Plaintiff walked slowly or with a limp and had trouble with sitting and standing. (Id.) A treating doctor, Dr. Francis Talangbayan, referred Plaintiff several times to the Temple University Hospital Pain Treatment Management Program for his back pain, although it did not appear he had ever been treated there. (Id.) Finally, Dr. Mark Orlow, an independent consulting physician, wrote in his June 24, 2008 report that Plaintiff had an antalgic gait and "appear[ed] to have a great deal of difficulty in removing his socks and shoes and also a great deal of difficult in mounting and dismounting from the examination table." (Id. (quoting R. 483).)

Nevertheless, the Magistrate Judge determined that the ALJ's decision regarding the severity of Plaintiff's back pain was supported by substantial evidence. The Magistrate Judge remarked that the aforementioned reports did not clearly compel the ALJ to find a severe impairment since they were only evidence of pain as opposed to a diagnosable back condition. In addition, the Magistrate Judge observed that more objective signs — such as swelling, deformity,

or neurological abnormalities — were absent from the record.  Indeed, Dr. Orlow found that:

"Lasegue signs and tests are negative.  There is no swelling or deformity.  All the joints show full

range of motion, no sensory, motor or reflex abnormalities, no swelling or deformity."  (Id. at 6

(quoting R. 483).)  Dr. Orlow ultimately diagnosed Plaintiff with only a "[h]erniated disk,

questionable."  (Id. (quoting R. 484.).)  Finally, an x-ray taken on July 24, 2008 — the single

objective laboratory test before the ALJ — resulted in the following findings:

> There is no evidence of spondylolysis or spondylolisthesis.  The spinous and the
> transverse processes are intact.  There is no loss of vertebral body height.  The
> interspaces are preserved.  The apophyseal joints are normal.  Pedicles are intact.  No
> significant abnormalities are seen in the region of sacroiliac joints.
>
> IMPRESSION: A minor congenital anomaly consisting of transitional vertebra is
> present.  Otherwise, the lumbosacral spine is within normal limits.

(Id. (quoting R. 441).)  Absent contradictory laboratory scans or clinical testing, the Magistrate

Judge found no basis on which to reverse the ALJ's severity determination.  (Id. at 6.)

Plaintiff now argues that the Magistrate Judge's analysis was erroneous and that the

observations by multiple physicians of Plaintiff's pain and restricted movement were a sufficient

basis on which the ALJ should have found his low back pain to be a "severe" impairment at step

two.  Plaintiff goes on to remark that the medical clinicians' actual observations of Plaintiffs'

antalgic gait and limited movement constituted "objective" findings of pain.[5]  Given "the ALJ's

erroneous failure to deem Plaintiff's back condition a 'severe' impairment," (Pl's Objections 3),

Plaintiff concludes that the Court would have to speculate as to what impact the inclusion of such

an impairment would have on the physical residual functional capacity assessment.  Accordingly,

---

[5]  Plaintiff also argues that the ALJ had the benefit of a subsequently-performed MRI scan of his
lumber spine prior to her decision.  (Pl.'s Objection's 3.)  This assumption is in error.  The ALJ's
decision was issued on July 16, 2009.  The MRI scan, however, was not performed until August
26, 2009, and, as such, was not part of the record before the ALJ.

he asserts that the case should be remanded for further review.

The Court, however, finds no error in the ALJ's refusal to classify this condition as severe. Primarily, the applicable law holds that, when a plaintiff alleges disabling pain, "he must prove that any symptom alleged as disabling results from a physical impairments demonstrable by medically acceptable clinical or laboratory techniques that could be expected to produce pain." Hanusiewicz v. Bowen, 678 F. Supp. 474, 477 (D.N.J. 1988). "[A] [p]laintiff is not required to show objective evidence of the pain itself, but he must provide 'objective medical evidence of some condition that could reasonably produce pain . . . .'" Id. (quoting Green v. Schweiker, 749 F.2d 1066, 1071 (3d Cir. 1984)). Stated differently, in order to find a severe impairment, the controlling regulations require more than just subjective complaints of pain or physician reports that claimant suffers from pain; that pain must be supported by the necessary objective medical evidence." Sassone v. Comm'r of Soc. Sec., 165 Fed. Appx. 954, 957-58 (3d Cir. 2006).

In this case, more than substantial evidence supports the ALJ's finding that Plaintiff did not have a severe back impairment. Although multiple medical clinicians echoed Plaintiff's subjective complaints of pain and observed Plaintiff's awkward and restricted range of motion, not one objective test suggested a medically-diagnosable back impairment. (See, e.g., R. 240, 267, 284, 286, 288, 290, 295, 483.) All physical examinations and diagnostic scans revealed nothing but mild abnormalities not consistent with a limiting disability. (See, e.g., R. 441 (finding "[a] minor congenital anomaly consisting of transitional vertebra is present. Otherwise, the lumbosacral spine is within normal limits"), 483-84 (noting that "Lasegue signs and tests are negative. There is no swelling or deformity. All the joints show full range of motion, no sensory, motor, or reflex abnormalities, no swelling or deformity").) Absent some evidence connecting the complained-of pain to a particular back impairment, the ALJ's refusal to deem such an impairment "severe" was

10

not in error.

Second, and perhaps more importantly, to the extent Plaintiff challenges not the ALJ's refusal to classify his back impairment as "severe," but rather the ALJ's failure to consider his complaints of back pain, his argument is misplaced.  When constructing Plaintiff's residual functional capacity, the ALJ expressly "considered all symptoms, including pain."  (R. 24.) Although the ALJ declined to credit any reports of a herniated disc or other back impairment, she clearly found that Plaintiff experienced some physical limitation from his complained-of pain and, accordingly, restricted him to only a range of light exertional work.  (R. 26.)  Had Plaintiff's subjective complaints been given no weight, such a restriction would have been unnecessary.

At this level of judicial consideration, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore, 356 F. Supp. 2d at 511 (internal quotations omitted).  Whether the Court would have reached a different conclusion is of no moment.  Given such a deferential standard, the Court deems the ALJ's severity determination at step two of the sequential analysis to be well-supported by substantial evidence and overrules Plaintiff's second Objection.

     **C.**    **Objection to Magistrate Judge's Conclusion that the New and Material Evidence Submitted to the Appeals Council — an MRI of Plaintiff's Lumbar Spine — Was Not Material (Third Objection)**

Plaintiff's final Objection involves an August 26, 2009 MRI of his lumbar spine.  This test occurred subsequent to the ALJ's decision and, accordingly, Plaintiff sought a remand, pursuant to sentence six of 42 U.S.C. § 405(g).  The Magistrate Judge, however, declined to recommend such a remand, finding no reasonable possibility that the reports would have changed the ALJ's decision.  Plaintiff now challenges this conclusion.

The sixth sentence of 42 U.S.C. § 405(g) provides that the district court may remand a social security appeal to the Commissioner for consideration of new evidence where the plaintiff has shown that the new evidence is material and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ."  42 U.S.C. § 405(g).  The United States Court of Appeals for the Third Circuit has enumerated four factors to guide this analysis:

> First, the evidence must be new and not merely cumulative of what is already in the record. . . .  Second, the evidence must be material, relevant and probative. . . .  Third, there must exist a reasonable probability that the new evidence would have caused the Commissioner to reach a different conclusion. . . .  Fourth, the claimant must show good cause as to why the evidence was not incorporated into the earlier administrative record.

Scatorchia v. Comm'r of Soc. Sec., 137 Fed. Appx. 468, 472 (3d Cir. 2005) (internal citations omitted).  Evidence is material if there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's decision."  Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1989).  In addition, in order to be material, "the evidence must relate to the time period for which benefits were denied and 'must not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.'"  Shuter v. Astrue, 537 F. Supp. 2d 752, 757 (E.D. Pa. 2008) (quoting Szubak, 745 F.2d at 833).

In the present case, the parties appear to concede that the evidence is new and not cumulative, and that there was good cause for not incorporating it into the earlier administrative record.  Their disagreement, however, centers on whether the new evidence is material, relevant, and probative.  Plaintiff argues that the MRI report could have reasonably resulted in a different conclusion because the ALJ discredited the treating physician largely based on the absence of evidence of a herniated disc — the diagnosis on which the treating physician rested his physical residual functional capacity assessment.  The August 26, 2009 MRI, however, expressly showed

some "[m]ild degenerative changes of the lumbar spine," thus flatly undermining the ALJ's reasoning.  (R. 528.)  As such, Plaintiff argues that the Magistrate Judge unjustifiably speculated that the objective evidence of a herniated disc would not have changed either the ALJ's evaluation of the treating doctor's functional capacity evaluation or her ultimate decision.

In light of the foregoing standards, the Court must disagree.  The sole diagnostic test before the ALJ at the time of her decision on July 16, 2009 was the x-ray taken on July 24, 2008.  (R. 441.)  At that time, the impression indicated "[a] minor congenital anomaly consisting of a transitional vertebra . . . [o]therwise, the lumbosacral spine is within normal limits."  (Id.)  The post-decision August 29, 2009 MRI,[6] however, showed some "[m]ild degenerative changes" at several levels.[7]  (R. 528.)  While this evidence is undoubtedly new, the Magistrate Judge correctly concluded that a sentence six remand for further consideration is unnecessary.  Primarily, nothing in this scan is so remarkable as to create a "reasonable possibility" that the ALJ would have changed her decision as to disability.  Indeed, the fact that Plaintiff had only "[m]ild" degeneration lends further support to the ALJ's imposition of only light limitations resulting from the back pain.  Second, and perhaps more importantly, Plaintiff disregards the fact that the MRI is not material evidence about his impairment during the time period for which benefits were denied, but rather evidence of a subsequent deterioration or "degeneration" of his condition.  Nothing in the MRI indicates that such mild disk herniation existed at the time Plaintiff sought or was denied benefits.  Accordingly, the Court overrules this Objection.

---

[6]  Although Plaintiff takes issue with the Magistrate Judge's description of this scan as an "x-ray," the Court finds this mischaracterization to be nothing more than harmless error.

[7]  Notably, there was also a post-decision x-ray showing a "[n]ormal lumbar spine."  (R. 529.)  As aptly reasoned by the Magistrate Judge, such evidence is obviously not relevant since it merely confirms the previous x-ray and bolsters the ALJ's decision.

13

IV.    **CONCLUSION**

In sum, the Court finds no merit to any of Plaintiff's pending Objections to the September 6, 2011 Report and Recommendation.  To the extent that the Objections are a verbatim recitation of the arguments presented to the Magistrate Judge, the Court declines to engage in de novo review.  To the extent Plaintiff makes specific Objections to the Report and Recommendation, the Court concludes, upon consideration of the entire record, that the ALJ's decision was well-reasoned, complied with all of the mandates under the pertinent Social Security Regulations, and was well-supported by substantial evidence.  In light of these findings, the Court adopts the Report and Recommendation and affirms the final decision of the Commissioner of Social Security.